IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge John L. Kane

Civil Action No. **12-cv-01946-JLK**

**TOG, INC**. and
**WILD HARVEST LLC**, on behalf of themselves and all others similarly situated,

        Plaintiffs,

v.

**UNITED STATES POSTAL SERVICE,**
**INNOVATIONS GROUP, INC.,** a Delaware corporation, and
**OMAR DAJANI**, and individual,

        Defendants.

## ORDER SETTING ORAL ARGUMENT ON MOTIONS TO DISMISS

Kane, J.

After careful review of the pending Motions to Dismiss in this case, I believe oral argument will assist me – and perhaps the parties – to distill the essence of the claims and defenses pled. Below is a recitation of the alleged facts as I understand them together with questions, not exclusive, for the parties to consider in preparing for oral argument.

Plaintiffs in this antitrust class action are private entities/merchants who operate Contract Postal Units (CPUs) providing postal services to the public pursuant to franchise-like contracts with the United States Postal Service ("Postal Service" or "USPS"). The contracts at issue are for CARS CPUs, meaning operators provide postal services at USPS prices using a USPS-supplied Contract Access Retail System (CARS) for weighing, rating, and metering mail, issuing stamps, and printing postage labels.

Under a CARS CPU contract, CARS units are loaded with postage and maintained by the USPS for a fee, with operators having to purchase additional supplies – like blank label rolls – from authorized sources only.  The use of any unauthorized supplier voids the warranty under which the USPS provides maintenance and repair services for the units.

Before July 2011, Defendant Innovations Group Inc. (IGI) was the only authorized CARS supplier under the USPS's CARS CPU contract, and the only source for blank label rolls.  After a testing and certification process initiated by CPU member association CPU Association of America (CPUAA), CPUAA was named as a second authorized source.  According to Plaintiffs, IGI was unhappy with the competition and commenced a "campaign" to reassert its monopoly as the sole source for CARS label rolls. **[Am Compl ¶¶ 98-100]** Using threats and by intimidating CPU operators who purchased CPUAA labels, IGI eventually succeeded in getting the USPS to retract its approval of CPUAA.  Plaintiffs describe the USPS/IGI label roll exclusivity an unlawful "tying arrangement" that violates federal antitrust laws, and filed suit on behalf of themselves and all other CPU operators against USPS, IGI, and IGI's principal, Omar Dajani.

The USPS and IGI/Dajani move to dismiss, arguing the conduct alleged is exempt from federal antitrust laws under *United States Postal Service v. Flamingo Indus., Ltd.*, 540 U.S. 736 (2004). The parties spend much of their briefing on the relative impact of Postal Accountability and Enhancement Act of 2006 (PAEA) on the viability of their Plaintiffs' claims, but I am unconvinced the Act is dispositive of – or perhaps even necessary to resolve  – the CARS CPU supply procurement dispute at issue.

For example, the "authorized source" requirement at issue is a term of the CPU/USPS service contract and as between Plaintiffs and the USPS, it is unclear why the dispute is not initially one for administrative review by the Postal Service Board of Contract Appeals under the Contract Disputes Act.[1]  Alternatively, the question arises as to whether Plaintiffs' allegations against the USPS are more appropriate for review by the Federal Trade Commission as allegations of unfair trade practices under Section 5 of that Act?[2]  It seems clear that the anti-competitive conduct alleged fits within the type of USPS conduct Congress intended to discourage, and to provide a private remedy against, in enacting PAEA.  Whether that remedy can be found in the antitrust laws under the facts alleged is another matter.

My overarching concern is that the dispute between Plaintiff CARS CPU operators and the USPS is more akin to a franchisee class action for breach of contract/unfair dealing. Neither CARS CPU units, nor the blank label rolls necessary to sustain them, fit neatly within the "product" rubric of 39 U.S.C. § 409's waiver (they are neither "market-dominant-" nor "competitive-" products as Congress seems to have been discussing them in the PAEA's legislative history or the Act itself).  Nor does the CPU contract requirement that operators purchase blank label rolls from an "approved source" or lose

---

[1] The Contract Disputes Act, formerly codified at 41 U.S.C. §§ 601-13, recodified effective January 4, 2011 at 41 U.S.C. §§7101-09.

[2] The PAEA specifically authorizes suits by and against the Postal Service under Section 5 of the FTCA, 15 U.S.C. § 45 "to the extent that such section 5 applies to unfair or deceptive acts or practices."

their maintenance warranty fit neatly within the "tying arrangement" rubric of the Sherman and/or Clayton Acts.  That is not to say I have made up my mind that Plaintiffs cannot state a claim under federal antitrust laws; it is merely to observe that the claim raises significant analytical challenges. Plaintiffs' allegations of unfair and anticompetitive practices on the part of the USPS and IGI raise bona fide concerns and state plausible claims of bad conduct resulting in injury.  It is simply not clear to me that federal antitrust laws offer an appropriate vehicle for seeking relief.

Plaintiffs' allegations against IGI – the principal "bad actor" in Plaintiffs' recitation of the facts – raise similar analytical challenges. While PAEA and amenability to suit under federal antitrust laws are not issues vis á vis IGI, the "tying" arrangement alleged again fits uneasily in the Sherman or Clayton Act rubric.  The label rolls at issue are "tied" to a retail system/device (the CARS unit and printers) that is not marketed or sold, and which arguably "belongs" to the Postal Service in its essential governmental, rather than competitor-in-the-marketplace status.  Further, IGI's anticompetitive conduct was aimed at CPUAA, yet CPUAA is not a party to this action.  In my view, the injuries Plaintiffs allege to have suffered at the hand of IGI are in the nature of tortious interference with the CPU/USPS contract and relationship, and for unfair competition vis á vis individual CARS CPU operators and CPUAA. While Plaintiffs are not in a contractual relationship with IGI and can assert no contract-based theory of relief against it, Plaintiffs' allegations paint a picture of purposeful efforts on the part of IGI to interfere with the CPU/USPS contract to enrich itself at Plaintiffs' expense.  Aren't Plaintiffs'

claims against IGA therefore analytically more akin to tortious interference rather than antitrust claims?

In short, this case raises complex and difficult legal and procedural issues about which I would like to hear further argument. Counsel are directed to CONFER regarding the substance of this Order and then to CONTACT chambers (at 303.844.6118) to schedule a mutually agreeable time for oral argument sometime in April 2013. Counsel will be directed to submit a Status Report no later than five days before the scheduled argument, setting forth any substantive agreements they ma have reached in their discussions, and specifying any anticipated additional requests for relief.

Dated: March 17, 2013

             **s/John L. Kane**
             SENIOR U.S. DISTRICT JUDGE