IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge John L. Kane

Civil Action No. **12-cv-01946-JLK**

**TOG, INC**. and
**WILD HARVEST LLC**, on behalf of themselves and all others similarly situated,

        Plaintiffs,

v.

**UNITED STATES POSTAL SERVICE,**
**INNOVATIONS GROUP, INC.,** a Delaware corporation, and
**OMAR DAJANI**, and individual,

        Defendants.

### MEMORANDUM OPINION AND ORDER

Kane, J.

> The United States Postal Service shall be operated as a basic and fundamental service provided to the people by the Government of the United States, authorized by the Constitution, created by Act of Congress, and supported by the people. The Postal Service . . . shall provide prompt, reliable, and efficient services to patrons in all areas and shall render postal services to all communities.

39 U.S.C. § 101(a).

Plaintiffs in this antitrust class action are private entities/merchants who operate as Contract Postal Units (CPUs) providing postal services to the public pursuant to franchise-like contracts with the United States Postal Service ("Postal Service" or "USPS"). CPUs provide postal services at USPS prices and are contractually required to

use a USPS-provided weighing, rating, and metering device known as CARS[1] to generate postage stamps and labels for use in mailing letters and packages.  CPUs are also obligated under the terms of their contract to purchase blank label rolls for use in CARS from USPS-certified sources at their own expense.  At one time, both defendant Innovations Group Inc. (IGI) and an entity named CPU Association of America (CPUAA) were approved sources for blank label rolls.  Plaintiffs in this case charge that IGI pressured the USPS to recall CPUAA's authorization so that CPUs are forced to purchase label rolls exclusively from IGI at "supracompetitive" prices.  Plaintiffs bring this action on behalf of themselves and other CPU operators, asserting antitrust and unfair competition violations against USPS, IGI, and principal, Omar Dajani.

      Defendants move to dismiss, arguing the conduct alleged is exempt from federal antitrust laws under *United States Postal Service v. Flamingo Indus.*, Ltd., 540 U.S. 736 (2004). While Congress in 2006 enacted The Postal Accountability and Enhancement Act (PAEA) partially waiving *Flamingo* immunity, the waiver does not extend to all postal activities and does not, according to Defendants, extend to the metering of mail by CPUs or, by logical extension, the generation of metered rate labels.  I agree.  Because metering labels -- and axiomatically the blank label roll sourcing requirement ancillary to that metering -- fall outside the ambit of the 2006 immunity waiver, the conduct complained of is beyond the reach of federal antitrust laws.

      The United States Postal Service - History and Regulatory Framework

---

[1] CARS is the acronym for the USPS's "Contract Access Retail System."

The parties agree that the key inquiry on this Motion to Dismiss is "whether or not Congress has waived USPS's sovereign immunity on antitrust claims for the actions alleged in the Amended Complaint." Pls.' Response to Mot. Dismiss (Doc. 25) at 3. Proper consideration requires a brief overview of the USPS's place in the structure of the federal government and the regulatory framework in which it operates, which I take from the Supreme Court's concise and readable recounting in *Flamingo*.

After the Revolution, both the Articles of Confederation and the Constitution explicitly empowered the National Government to provide and regulate postal services. Benjamin Franklin was appointed the nation's first Postmaster General on July 26, 1775, and "[f]rom those beginnings, the Postal Service has become 'the nation's oldest and largest public business.'" *Flamingo*, 540 U.S. at 739-40 (quoting J. Tierney, Postal Reorganization: Managing the Public's Business vii (1981) and recounting the Postal Service's various incarnations from a subordinate to the Treasury Department immediately after the Constitution's ratification to an executive, Cabinet-level department in Andrew Jackson's administration and beyond).

Major change came with the Postal Reorganization Act of 1970 (PRA), Pub. L. No. 91-375, 84 Stat. 719 (1970), 39 U.S.C. § 101 *et seq*., in which Congress renamed the Post Office Department the United States Postal Service and removed it from the Cabinet to reduce political influences on its operations and make it "an independent establishment of the executive branch" of the United States government. The USPA retained its mandate to provide postal services to all communities at fair and reasonable rates and

fees. 39 U.S.C. §§ 101, 403. Specific enumerated powers of the Postal Service relevant to this decision include the authority:

    (1) to provide for the collection, handling, transportation, delivery, forwarding, returning, and holding of mail, and for the disposition of undeliverable mail

    (2) to prescribe, in accordance with this title, the amount of postage and the manner in which it is to be paid;

    (3) to determine the need for post offices, postal and training facilities and equipment, and to provide such offices, facilities, and equipment as it determines are needed; [and]

    (4) to provide and sell postage stamps and other stamped paper, cards, and envelopes and to provide such other evidences of payment of postage and fees as may be necessary or desirable.

*Id.* § 404(a). The USPS exercises these powers to advance its obligation to "provide postal services to bind the Nation together through the personal, educational, literary, and business correspondence of the people. It shall provide prompt, reliable, and efficient services to patrons in all areas and shall render postal services to all communities." *Id.* § 101.

## DISCUSSION

In *Flamingo,* the Supreme Court held that while Congress clearly intended some waiver of immunity by its inclusion of the "sue and be sued" clause in the Postal Reorganization Act (39 U.S.C. § 401), it did not intend for substantive antitrust doctrines

4

to reach the USPS. 540 U.S. at 744, (citing *FDIC v. Meyer*, 510 U.S. 471, 484, (1994) (applying a two-part analysis to claims against federal entities where a waiver of immunity is in question; the Court considers (1) whether there is a waiver of immunity for actions against the federal entity, and if there is (2) whether the substantive doctrine originating the claim is meant to apply to the federal entity)). The PAEA partially overrides *Flamingo* by making the USPS a "person" for the purposes of antitrust laws "[t]o the extent that the Postal Service, or other Federal agency acting on behalf of or in concert with the Postal Service, engages in conduct with respect to any product which is not reserved to the United States under section 1696 of title 18." 39 U.S.C. § 409(e). Section 1696, of course, prohibits the private express of stamped mail, establishing the postal monopoly for its carriage and conveyance. 18 U.S.C. § 1696. For our purposes, the relevant inquiry after PAEA's enactment is the extent to which the conduct complained of involves a postal "product" other than one reserved to the USPS under its monopoly for the carriage of stamped (or metered) mail.

Plaintiffs attempt to bring the CARS CPU contract and CPU functions within the rubric of the PAEA immunity waiver by characterizing them as "product[s] which [are] not reserved to the United States under section 1696." *See e.g.,* Am. Compl. (Doc. 22) at 27 (positing that the CARS System itself, leased from IGI and distributed to CPUs, is a "product" and that "signage, furniture, collection boxes, and postage" are "products"). The attempt is strained, and I reject it. As a matter of law, these items are not "products" as that term is defined in the Postal Services Act and, even if they were, would fall within

the USPS's mail carriage monopoly and therefore not swept up in the PAEA's immunity waiver for antitrust laws.

1. *The CARS System, Postage, Prepayment of Postage, and additional materials and services necessary to running a CARS CPU are not Products under the PAEA.*

"[P]ostal service[s]" are defined to encompass the "delivery" of letters and similar materials and "functions ancillary" thereto, including the "sorting" and "transporting" of mail. 39 U.S.C. §102(5). A "product," in contrast, is a "postal service" with a "distinct market characteristic" or for which a "rate may, or may reasonably be, applied." *Id.* §102(6). Under these definitions, it is not possible to describe the CARS Units or blank label roles at issue in this case as "products," reserved to the United States or otherwise. As those materials are not within the PAEA's immunity waiver, the USPS is not answerable as a "person" under it for conduct related to those materials.

I agree with the USPS that the CARS System lacks a "distinct market characteristic" for purposes of the PSA's "products" definition. Plaintiffs acknowledge that it is not marketed or offered to the public, and the USPS does not charge a "rate" for it. Am. Compl. at 2-3. Plaintiffs argue that postage and prepaid postage are "products" on the ground that the USPS charges consumers money for them. *Id*. at 17-18. However, postage is not itself a product. It is a receipt of payment for the carriage of mail and other services. 39 U.S.C. § 404(4) (defining the power of the USPS to issue postage stamps and similar tokens as "evidences of payment"). Plaintiffs attempt to equate "postage" with "customized postage," and argue the USPS's concession that the latter is a product confesses the former. Pls.' Resp. Mot. Dismiss (Doc. 25) at 23 (describing metered

postage as a forerunner to customized postage, and asserting that if customized postage is a product, then its predecessor prepaid postage should also be considered a product). I disagree.  Prepaid postage is the same as regular postage, and customized postage is distinguishable from both because in purchasing customized postage, consumers are paying for the privilege of placing images of their choice on the stamp and not simply securing it as evidence of payment for mail delivery. *See* Postal Regulatory Commission, (Draft) Mail Classification Schedule (April 1, 2013) at 195, *available at* http://www.prc.gov/PRC-DOCS/library/mcs/MCSRedline06122013.doc. Consumers pay a rate for that service with a rate distinct from and in addition to the amount paid to cover the cost of carrying the mail. *Id.*, *see* Tr. Oral Argument, at 61.

As plaintiff acknowledges, the PAEA provided for the creation of the Postal Regulatory Commission (PRC), which was tasked with identifying all postal services, non-postal services, and products offered by the USPS and eliminating those non-postal services and products not in line with its mission.  Pls.' Resp. at 8. The PRC now regularly publishes updated editions of the Mail Classification Schedule (MCS) which contains comprehensive and categorical lists of the distinct "products," postal services, and non-postal services offered by the USPS. 39 U.S.C. § 3961. The current version of MCS does not define as products any of the CARS related items asserted by Plaintiffs, including any aspect of the labels affixing or constituting postage. Postal Regulatory Commission, (Draft) Mail Classification Schedule (April 1, 2013) at ii-v, 1-3, 213-218 (listing all services and products offered by the USPS). As Plaintiffs themselves

7

concede,[2] PRC-issued interpretations of the PAEA such as the MCS are "binding, or at a minimum entitled to substantial deference" because the PRC "is the agency charged with the interpretation and implementation of the PAEA." Resp. at 23-24 (citing *United States Postal Service v. Postal Regulatory Comm'n*, 599 F.3d 705, 710 (D.C. Cir 2010)). As the materials set out by Plaintiffs fail to meet the statutory or regulatory definitions of products, I find that the PAEA's waiver of sovereign immunity for "product" related conduct under the antitrust laws does not apply.

2.  *Even if the CARS System or Label Rolls were Products, they Fall within the Postal Monopoly and Conduct Related to them is Not Subject to the Waiver of Sovereign Immunity under the PAEA.*

The PAEA waives sovereign immunity for the USPS for any conduct relating to products "not reserved to [the government]" under the postal monopoly created by 18 U.S.C. § 1696. 39 U.S.C. 409(e). The USPS operates under an absolute requirement to provide "postal services" to all communities the United States (*id.* §§ 101, 403), and is provided with the powers necessary to achieve that task. *Id.* § 404(a)(1). As previously stated, Congress defines "postal services" as the "delivery of letters, printed matter, or mailable packages, including acceptance, collection, sorting, transportation, or other functions ancillary thereto." *Id.* § 102(5). No reasonable reading of the PAEA or its legal history supports the contention that Congress meant to subject the USPS to antitrust

---

[2] Plaintiffs refer to the Domestic Mail Classification Schedule (DMCS), which is the predecessor to the MCS and is no longer used. Through inadvertence or otherwise, Plaintiffs state that § 3040 of the DMCS, which defines how postage may be paid, "specifically identifies and includes the prepayment of postage through meters and other methods as 'postal products.'" Resp. (Doc. 25) at 22. The term "postal product" does not appear in that section, nor is postage described in a manner remotely consistent with the definition of a "product" under 39 U.S.C. § 102(6).

lawsuits for products and postal services which the USPS is required by law to provide under its universal service mandate. Assuming arguendo that Plaintiffs' correctly identified the (1) the CARS System; (2) postage; (3) prepayment of postage; and (4) additional materials and services necessary to running a CPU as "products" under the PAEA, the question would then be whether those "products" fall within the statutory postal monopoly.

The USPS provides CARS Systems to CARS CPUs. These devices allow the CPUs to provide metered postage for letters and packages. The USPS contracts with CPUs as a means of fulfilling its service obligations, much in the same way it contracts with utility companies and other services which enable the functions of the USPS. *See* Tr. of Oral Argument at 58. This contract, the CARS System, and the CARS CPU itself are clearly ancillary functions to the delivery of mail under the meaning of 39 U.S.C. §102(5) in that they enable the carriage of mail and fall within the statutory mail monopoly and universal service obligation. As the generation of CARS labels is a means or activity also ancillary to the delivery of mail, this reasoning applies equally to blank label rolls, and services necessary to perform this function and services necessary for running a CPU. Such materials are merely components of the CARS CPU and the hardware necessary to effect its mail delivery function.

Postage and prepayment of postage are indicia of payment for postal services. Only the USPS or its agents can issue postage, 39 U.S. C. § 404(a)(4), and a letter cannot be sent without postage. *Id.* § 601(a)(2). Postage plainly enables the carriage of mail and

9

therefore falls within the postal monopoly and universal service mandate as an ancillary function under § 102(5).

For the foregoing reasons, even if Plaintiffs could characterize (1) the CARS System; (2) postage; (3) prepayment of postage; and (4) additional materials and services necessary to running a CPU as "products" within the scope of 39 U.S.C. § 409(e), those products would fall within the statutory mail monopoly and therefore beyond the reach of the antitrust laws even after the PAEA's enactment.

The United States Postal Service's Motion to Dismiss the Plaintiffs' antitrust claims is GRANTED on the ground that the USPS is not a "person" under the *Meyer* standard or the PAEA based on its conduct in imposing or altering the terms of its contracts with CPUs. While the USPS's conduct in changing the playing field with regard to blank label roll sourcing and IGI's strong-arm tactics in getting CPUs to purchase those rolls at "supracompetitive" prices may subject either or both to other causes of action under the PAEA or other statutory or common law theories of relief, they do not subject either to antitrust liability on the grounds alleged. Because IGI's Motion to Dismiss is premised on the same immunity defense as the USPS's, that Motion is now MOOT and is DENIED as such. Counsel shall CONFER and SUBMIT a Joint Status Report on or before July 19, 2013, on how they wish to proceed in light of the Court's ruling.

Dated July 3, 2013.                    s/John L. Kane
                                       SENIOR U.S. DISTRICT JUDGE